**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>(1) OSAKPAMWAN HENRY OMORUYI, )<br>    a/k/a "Clifford Bernard" or "Bernard )<br>    Clifford" and )<br><br>(2) OSARETIN GODSPOWER OMORUYI, )<br>    a/k/a "Nelson Bright" or "Bright Nelson," )<br><br>    Defendants ) | Criminal No. 21-10217-PBS |

**SUPPLEMENTAL FILING IN SUPPORT OF**
**GOVERNMENT'S EMERGENCY MOTION FOR REMAND AS TO**
**OSAKPAMWAN HENRY OMORUYI AND OSARETIN GODSPOWER OMORUYI**

The government filed an Emergency Motion for Remand following the jury's verdict, Dkt. 187, after which the Court ordered a hearing on the issue of remand. The government herein provides a supplemental filing in support of its Motion for Remand.

*I.     Legal Standard*

"[T]he judicial officer *shall* order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee. . . ." 18 U.S.C. § 3143(a) (emphasis added). When considering a defendant's risk of flight, the Court should consider the connections, if any, a defendant has in a foreign country.[1] The Court should also

---

[1] *See, e.g., United States v. Valdivia*, 104 F. App'x 753, 754 (1st Cir. 2004) (affirming pre-trial detention order and finding serious risk of flight based on defendant's "strong connections" to "foreign countries," despite his "strong family ties [to the jurisdiction]," "steady and gainful employment history," and "his relatives' willingness to take custody of him and help finance his bail"); *United States v. Hussain*, 6 F. App'x 50, 51 (1st Cir. 2001) (affirming pre-trial

remain mindful that electronic monitoring, while increasing the likelihood that a defendant's flight will be *detected*, does not itself *prevent* flight.[2]  For these reasons, another session of this Court recently ordered remand of a defendant pending sentencing after the defendant—who had laundered fraud proceeds and transferred those proceeds overseas—was convicted at trial. *United States v. Abbas,* 20-cr-10016-LTS.

II.      *Factual Basis for Remand*

       For the reasons set forth below, there is not "clear and convincing evidence" that either defendant is "not likely to flee."  18 U.S.C. § 3143(a).

    a.   *Defendants face substantial periods of incarceration, orders of restitution and forfeiture, and deportation.*

       Based on an initial, pretrial calculation of the defendants' Guidelines Sentencing Range, the government anticipates each defendant faces a period of incarceration of between 108 to 135 months.[3]  The Guidelines Sentencing Range alone is a strong incentive for both defendants to not

---

detention order based on risk of flight for defendant who was citizen of foreign country with minimal ties to the United States); *United States v. Vidarte-Hernandez*, No. 19-40049-TSH-MPK, 2020 WL 4813356, at *3 (D. Mass. Aug. 19, 2020) (same, citing "significant family ties to [defendants'] home countries where they would be deported [upon conviction]" in affirming order of detention based on risk of flight for two defendants, even though they were lawful permanent residents, had lived in Massachusetts a combined 23 years, and had significant others and children living in Massachusetts).

[2] *See, e.g., United States v. Juan Artiles Taveras*, No. 1:17-cr-10212-GAO-2, Dkt 97, (defendant absconded despite electronic monitoring); *United States v. Daniells*, No. 15-10150-GAO, 2017 U.S. Dist. LEXIS 78148, at *9 (D. Mass. Feb. 16, 2017) ("Electronic monitoring is useful when the court does not want an accused person visiting certain areas or wants to ensure that they stay at their home rather than roaming around freely at night. If someone is going to flee, they can cut the electronic monitor off and leave."); *United States v. Newton*, 21-cr-10035-GAO-MPK, ECF No. 45 (ordering detention based on significant ties to Kenya: "[P]eople can cut off a bracelet and drive away. And I've had clients myself just cut off a bracelet and take off.").

[3] The government calculated an Offense Level 31 as follows: (1) base offense level of 7 under Section 2B1.1(a)(1); (2) 16-level increase under Section 2B1.1(b)(1)(J) because the

appear for their sentencing hearings.  Additionally, both defendants are facing potential

restitution and/or forfeiture orders *in the millions* followed by near-certain deportation to their

country of origin (Nigeria), which increases their risk of flight.

     b.  *Defendants have access to fake identification documents.*

     The government established at trial that the defendants have access to fake identification

documents, including fake passports, with their picture but in the names of other people.  For

example, as to Osaretin, these are three of the fake passports seized by law enforcement:



Exs. 24, 189 (physical exhibits).  As another example, as to Henry, these are three of the fake

passports seized by law enforcement:

---

offense involved a loss of more than $1.5 million but not more than $3.5 million; (3) 2-level
increase under Section 2B1.1(b)(10)(B) because a substantial part of a fraudulent scheme was
committed from outside the United States; (4) 2-level increase under Section 2B1.1(b)(11)(A)(ii)
because the offense involved the possession or use of an authentication feature; (5) 2-level
increase under Section 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims; and
(6) 2-level increase under Section 2S1.1(b)(2)(B) because the defendant was convicted under 18
U.S.C. § 1956.



Ex. 4; *see also* Exhibit 190 (physical exhibit).

Notably, as defense elicited at trial through cross-examination of William Foley (Department of Homeland Security), for at least some of these passports, Mr. Foley was unable to readily identify them as fakes.  The defendants' access to these sorts of fake passports— including passports from their home country of Nigeria—increases their risk of flight.

   c.  *Defendants have substantial ties to Nigeria, including family, a network of co-conspirators, and profits from their illegal scheme*

Both defendants were born and raised in Nigeria and regularly travelled there prior to their arrest.  Ex. 80 at 6, 9 (U.S. Customs & Border Protection Travel Records for Henry Omoruyi and Osaretin Omoruyi).  As the government demonstrated at trial, the defendants also have a network of co-conspirators and family members in Nigeria and surrounding West African countries.  The following are only the small number of examples of the defendants' overseas contacts that the government identified in trial exhibits:

   •  Ex. 127.1 (WhatsApp Chat with "Danny Omoruyi" / Nigerian Country Code);

   •  Ex. 128.1 (WhatsApp Chat with "Godfery" / Benin Country Code);

- Ex. 129.1 (WhatsApp Chat with "Osaheni" / Nigerian Country Code);

- Ex. 130.1 (WhatsApp Chat with "Ehis 2" / Nigerian Country Code);

- Ex. 132 (WhatsApp Chat with "Runthings Major" / Ghana Country Code); and

- Ex. 199 (WhatsApp Chat with "Ghetto Dreamz" / Nigeria Country Code).

In addition to their overseas network, the government also demonstrated at trial that the defendants transferred the majority of their fraud proceeds overseas, including to accounts in their own names.  That evidence came in through bank records and summary charts.  For example, *in 2020 alone,* and from a *single U.S.-based bank account*, Osaretin transferred *more than $250,000 to his own Nigerian bank accounts*, as demonstrated here:

## Osaretin Omoruyi
### 2020 International Wires Sent to First Bank of Nigeria from JPMC x8196

| Date | Sent To | Wire Memo | Amount | Date | Sent To | Wire Memo | Amount |
|------|---------|-----------|--------|------|---------|-----------|--------|
| 06/08/20 | Osaretin Omoruyi | Family Expenses | $ 6,000.00 | 09/25/20 | Osaretin Omoruyi | Real Estate Purchase | $ 4,500.00 |
| 06/26/20 | Osaretin Omoruyi | Real Estate Purchase | $ 8,000.00 | 09/28/20 | Osaretin Omoruyi | Real Estate Purchase | $ 4,000.00 |
| 07/01/20 | Osaretin Omoruyi | Real Estate Purchase | $ 8,000.00 | 10/28/20 | Osaretin Omoruyi | Real Estate Purchase | $ 8,500.00 |
| 07/14/20 | Osaretin Omoruyi | Real Estate Purchase | $ 11,500.00 | 11/03/20 | Osaretin Omoruyi | Real Estate Purchase | $ 3,000.00 |
| 07/21/20 | Osaretin Omoruyi | Real Estate Purchase | $ 6,000.00 | 11/23/20 | Osaretin Omoruyi | Real Estate Purchase | $ 12,000.00 |
| 07/27/20 | Osaretin Omoruyi | Real Estate Purchase | $ 17,000.00 | 12/07/20 | Osaretin Omoruyi | Real Estate Purchase | $ 10,000.00 |
| 08/05/20 | Osaretin Omoruyi | Real Estate Purchase | $ 41,000.00 | 12/10/20 | Osaretin Omoruyi | Real Estate Purchase | $ 12,500.00 |
| 08/13/20 | Osaretin Omoruyi | Real Estate Purchase | $ 10,000.00 | 12/17/20 | Osaretin Omoruyi | Real Estate Purchase | $ 4,000.00 |
| 08/18/20 | Osaretin Omoruyi | Real Estate Purchase | $ 10,000.00 | 12/22/20 | Osaretin Omoruyi | Real Estate Purchase | $ 15,500.00 |
| 08/24/20 | Osaretin Omoruyi | Real Estate Purchase | $ 20,000.00 | 12/28/20 | Osaretin Omoruyi | Real Estate Purchase | $ 10,000.00 |
| 09/01/20 | Osaretin Omoruyi | Real Estate Purchase | $ 15,000.00 | 12/30/20 | Osaretin Omoruyi | Real Estate Purchase | $ 10,000.00 |
| 09/09/20 | Osaretin Omoruyi | Real Estate Purchase | $ 5,000.00 | | | Total | $ 256,500.00 |
| 09/21/20 | Osaretin Omoruyi | Real Estate Purchase | $ 5,000.00 | | | | |

Ex. 99 at 49.  Similarly, *in 2020 alone,* and from a *single U.S.-based bank account*, Henry transferred *nearly $120,000 to his own (or Osaretin's) Nigerian bank accounts*, as demonstrated here:

## Henry Omoruyi
### 2020 International Wires Sent to First Bank of Nigeria from JPMC x1318

| Date | Sent To | Wire Memo | Amount | Date | Sent To | Wire Memo | Amount |
|---|---|---|---|---|---|---|---|
| 06/03/20 | Henry Omoruyi | Family Expenses | $ 500.00 | 10/28/20 | Henry Omoruyi | Health/Medical Services | $ 4,000.00 |
| 07/15/20 | Henry Omoruyi | Real Estate Purchase | $ 500.00 | 11/02/20 | Henry Omoruyi | Education Expenses | $ 1,000.00 |
| 07/22/20 | Henry Omoruyi | Funding Investments | $ 1,000.00 | 11/04/20 | Henry Omoruyi | Family Expenses | $ 4,000.00 |
| 07/27/20 | Henry Omoruyi | Personal Expenses | $ 1,000.00 | 11/10/20 | Osaretin Omoruyi | Family Expenses | $ 5,000.00 |
| 08/13/20 | Henry Omoruyi | Business Expenses | $ 2,000.00 | 11/17/20 | Osaretin Omoruyi | Family Expenses | $ 3,850.00 |
| 08/20/20 | Henry Omoruyi | Business Expenses | $ 2,000.00 | 11/23/20 | Osaretin Omoruyi | Family Expenses | $ 3,000.00 |
| 09/23/20 | Osaretin Omoruyi | Real Estate Purchase | $ 4,000.00 | 12/01/20 | Osaretin Omoruyi | Health/Medical Services | $ 5,000.00 |
| 09/28/20 | Henry Omoruyi | Real Estate Purchase | $ 8,000.00 | 12/07/20 | Osaretin Omoruyi | Health/Medical Services | $ 5,000.00 |
| 10/02/20 | Henry Omoruyi | Health/Medical Services | $ 6,000.00 | 12/09/20 | Osaretin Omoruyi | Health/Medical Services | $ 5,000.00 |
| 10/05/20 | Henry Omoruyi | Family Expenses | $ 6,000.00 | 12/21/20 | Henry Omoruyi | Business Travel | $ 5,000.00 |
| 10/05/20 | Henry Omoruyi | Education Expenses | $ 4,000.00 | 12/22/20 | Henry Omoruyi | Family Expenses | $ 7,000.00 |
| 10/06/20 | Henry Omoruyi | Family Expenses | $ 6,400.00 | 12/23/20 | Henry Omoruyi | Family Expenses | $ 6,000.00 |
| 10/13/20 | Henry Omoruyi | Personal Expenses | $ 4,000.00 | 12/23/20 | Osaretin Omoruyi | Family Expenses | $ 1,500.00 |
| 10/15/20 | Henry Omoruyi | Personal Expenses | $ 3,200.00 | 12/28/20 | Osaretin Omoruyi | Business Expenses | $ 9,700.00 |
| 10/19/20 | Henry Omoruyi | Health/Medical Services | $ 6,000.00 | | | Total | $119,650.00 |

Ex. 99 at 32.

The Court can and should reasonably infer that these fraud proceeds—including the massive amount of fraud proceeds transferred to Nigeria for "real estate"—are waiting for the defendants if they are able to escape from the United States.  The defendants' overseas ties, including their overseas network of co-conspirators and family members, and the substantial fraud proceeds they transferred to themselves at overseas bank accounts, drastically increase the defendants' risk of light.

III.     Conclusion

      For the reasons set forth above, the Court should Order both defendants remanded pending sentencing.

                                            Respectfully submitted,

                                            JOSHUA S. LEVY
                                            Acting United States Attorney

By: */s/ Christopher J. Markham*
        CHRISTOPHER J. MARKHAM
        BENJAMIN A. SALTZMAN
        Assistant United States Attorneys

7

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: June 15, 2023

*/s/ Christopher J. Markham*
CHRISTOPHER J. MARKHAM
Assistant United States Attorney